BRIAN A. JOHNSEN,

        Plaintiff,

v.

        Case No. 14-cv-2585-DDC

DONALD G. BUTTRON,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff Brian A. Johnsen brings this diversity action against defendant Donald G. Buttron to recover damages from a traffic accident involving plaintiff's three-wheeled motorcycle and defendant's farm tractor. Plaintiff asserts that defendant operated his tractor negligently, causing plaintiff to crash into a roadside ditch and injure himself. This matter comes before the Court on two motions. Plaintiff has filed a Motion for Partial Summary Judgment (Doc. 31) asking the Court to prohibit defendant from presenting one aspect of his comparative fault affirmative defense. Defendant has filed a Motion to Exclude Testimony and Declarations of Witness Kristian Keberlein (Doc. 33). For reasons explained below, the Court grants defendant's motion in part and denies plaintiff's motion in its entirety.

### I. Defendant's Motion to Exclude

Defendant asks the Court to exclude the declarations, report, and testimony of plaintiff's expert witness, Kristian Keberlein. After reviewing Mr. Keberlein's report, the Court concludes that several of Mr. Keberlein's conclusions invade the province of the jury and therefore it grants in part and denies in part defendant's motion.

## A. Legal Standard

The Court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). In performing this role, the Court has broad discretion when deciding whether to admit expert testimony. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996). Federal Rule of Evidence 702 permits a witness to testify as an expert only where the Court determines that "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009)).

Defendant contends that Mr. Keberlein's testimony "will not assist the trier of fact in understanding the evidence or determining any fact in issue" under Rule 702. Doc. 34 at 3. "Many factors have a bearing on whether expert testimony will assist the trier of fact." 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure Evidence: § 6264 (1st ed.). One factor considers whether expert testimony will undermine the judge's power to decide the law or encroach on the jury's power to determine the meaning of the evidence and assess the credibility of witnesses. *Id.* "Indeed, it is ordinarily improper to have a witness testify regarding what the applicable law is; it is the trial judge's duty to inform the jury on the matter." *United States v. Lake*, 472 F.3d 1247, 1263 (10th Cir. 2007). Similarly, "testimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). Although Federal Rule of Evidence 704 allows experts to testify about ultimate issues of *fact*, they may not give opinions on ultimate issues of *law*. *See Specht*, 853 F.2d at 809.

### B.   Mr. Keberlein's testimony

Plaintiff seeks to present Mr. Keberlein's expert testimony about what he contends are a "wide range of topics and issues relevant to this case" including the "rules of the road in Kansas." Doc. 35 at 2, 4. During the course of his investigation, Mr. Keberlein inspected the accident scene and reviewed a number of documents, including the accident report and the transcripts of depositions taken by the parties. *See* Doc. 35-1 at 3. Mr. Keberlein also reviewed "Chapter 8 sections 15 and 17 of [the] Kansas Statutes." *Id*. at 4. Mr. Keberlein used this information to draw conclusions about the accident and "create a sight line from the approximate location of the [tractor's] left interior mounted mirror to the rear" of defendant's fertilizer spreader. *Id*. at 14.

Mr. Keberlein's expert report lists his specific opinions, as follows:

1.  The stimulus for evasive driver action is the recognition of a hazard.

2.  The incident took place in an area marked with two solid yellow lines indicating a no passing zone.

3.  The roadway geometry and sign positions allowed space for [defendant's] [t]ractor and trailer to be pulled . . . off the roadway.

4.  It is a recommended safe farm tractor driving technique to pull to the right and allow faster traffic to pass. [Defendant's] moving to the right, slowing to a stop and waving traffic by may have been construed that he was yielding to the traffic behind him.

5.  Both Rosas and [plaintiff] believed [defendant] was allowing them to overtake his tractor and trailer. [Defendant's] slow moving or stopped traffic unit presented an obstruction to the safe movement of traffic on eastbound K-16 Highway.

6.  [Defendant] failed to see [plaintiff] riding behind Rosas on K-16 Highway.

7.  The lateral movement of the tractor towards the field entrance intruded into [plaintiff's] path and was the stimulus for the evasive action.

8.  [Defendant] failed to scan his surroundings prior to making a left turn.

9. At no time, except to turn, should [defendant's] [t]ractor and towed unit have been over the center line of the K-16 Highway.

10. [Defendant] failed to have proper lighting at the rear of his towed unit.

11. [Plaintiff's] passing maneuver was a reasonable action based on the traffic conflict ahead of him.

12. Both [plaintiff] and Rosas would have been visible to the rear of [defendant] prior to closing within 287 Feet of the trailer.

Doc. 35-1 at 23-26 (internal citations omitted).

## C. Discussion

Defendant asserts that the opinions expressed by Mr. Keberlein in his report are irrelevant and will not help the trier of fact understand the evidence or determine facts in issue. Defendant also contends that Mr. Keberlein's opinions are inadmissible because they "embrace the ultimate issue of negligence" and "are submitted for the sole purpose of bolstering the credibility of [p]laintiff's account of the accident." Doc. 34 at 3-4. Plaintiff counters that Mr. Keberlein's opinions are relevant and admissible because they "relate to rules of the road, driving issues and reconstruction issues, and some human factors of drivers in response to stimuli they observe." Doc. 35 at 8. Using the numbers used in Mr. Keberlein's expert report, the Court addresses the admissibility of each of his opinions, below.

### 1. Opinion Nos. 1, 2, 3, 4, 6, 7, 8, and 12 are not excluded pretrial.

Mr. Keberlein is an accident reconstruction specialist and former Kansas Highway Patrol Trooper with more than 20 years' experience analyzing and reconstructing traffic incidents on Kansas roadways. *See* Doc. 35-1 at 27. Mr. Keberlein inspected the area where the accident occurred. He also used scaled images of the vehicles involved to calculate a "sight line" behind defendant's tractor and trailer which, he contends, measures defendant's ability to see other

vehicles behind him. Given Mr. Keberlein's training, experience, and analysis, the Court

concludes that he has specialized knowledge that may help a jury understand technical evidence

about the crash site and the accident itself. Mr. Keberlein's report appears to present his

conclusions about that evidence in Opinion Nos. 1, 2, 3, 4, 6, 7, 8, and 12.[1] The Court declines

to exclude Keberlein's expert testimony on those subjects.

### 2. Opinion Nos. 5, 9, 10, and 11 are inadmissible because they articulate and apply Kansas law.

Federal Rule of Evidence 704 permits an expert witness to offer testimony bearing on the

ultimate issues of fact. Fed. R. Evid. 704(a); s*ee also Specht*, 853 F.2d at 808 ("[T]estimony on

ultimate facts is authorized under Rule 704"). But an expert may not "articulate[] the ultimate

principles of law governing the deliberations of the jury." *Specht*, 853 F.2d at 808. This is so

because expert testimony articulating and applying the ultimate legal issues to facts "direct[s] a

verdict" and does not assist "the jury's understanding and weighing of the evidence." *Id*.

("[T]estimony on the ultimate factual questions aids the jury in reaching a verdict; testimony

which articulates and applies the relevant law, however, circumvents the jury's decision-making

function by telling it how to decide the case.").

Mr. Keberlein's report advances four opinions that try to apply the facts of this case to

the Kansas traffic statutes. Mr. Keberlein's report, citing Kansas law, opines that defendant's

tractor "presented an obstruction to the safe movement of traffic" and, as a result, plaintiff's

"passing maneuver was a reasonable action." Doc. 35-1 at 24-25 (numbered as Opinion Nos. 5

and 11) (citing K.S.A. § 8-1514 and stating that it "allows passing of an obstruction in the

---

[1]      Opinion Nos. 6 and 8 of Mr. Keberlein's expert report claim that defendant "failed to see
[plaintiff] riding behind Rosas on K-16 Highway" and "failed to scan his surroundings prior to making a
left turn." Doc. 35-1 at 24. Given the information in Mr. Keberlein's report, the Court cannot determine
whether these opinions are the result of Mr. Keberlein's analysis or merely a restatement of the parties'
testimony about the accident. Thus, the Court does not exclude these opinions pretrial.

roadway when safe to do so").  The report also contends that defendant violated Kansas law by

failing "to have proper lighting at the rear of his towed unit" and by crossing the centerline of the

highway.  *Id.* at 25 (numbered as Opinion Nos. 9 and 10) (citing K.S.A. § 8-1524(e) and K.S.A.

§ 8-1717).  These opinions invade the province of the jury because they direct the jury to apply

the facts in a specific manner to the ultimate legal issues.  The Court thus grants defendant's

motion in part and excludes Mr. Keberlein's testimony and report on Opinion Nos. 5, 9, 10, and

11.

## II. Plaintiff's Motion for Partial Summary Judgment

### A.  Uncontroverted Facts

The following facts are uncontroverted or, if controverted, are stated in the light most

favorable to defendant, the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

On March 18, 2014, plaintiff and his friend, Charles Rosas, were riding their motorcycles

on Kansas Highway 16 ("K-16") in rural Jefferson County, Kansas.  As the two men rode east,

they came up behind defendant's farm tractor.  Defendant was driving his tractor and pulling a

fertilizer spreader in the eastbound lane toward his field nearby.  Plaintiff and Mr. Rosas had to

slow as they approached defendant, who was traveling only 15 miles per hour.

Plaintiff and Mr. Rosas rode behind defendant's tractor for about one quarter of a mile.

Throughout that stretch, K-16 is a two-lane road.  It also is a no-passing zone—marked by a

solid, double yellow centerline—where Kansas law prohibits drivers, except in two narrow

situations, from driving left of the centerline.  *See* K.S.A. § 8-1520(b)-(c) (barring travel on the

left side of the road in a no passing zone except when turning left or where an obstruction exists).

K-16 has a posted speed limit of 55 miles per hour.  But, because of an impending hill, curve in

the road, and three-way intersection, an advisory sign suggested that drivers limit their speed to 35 miles per hour.

Defendant's field is located directly adjacent to the westbound lane of K-16, near the three-way intersection. As the three vehicles neared the field's access point, Mr. Rosas crossed the solid, double yellow centerline into the westbound lane, increased his speed, and passed defendant's tractor.

After Mr. Rosas completed his pass, defendant activated his left turn signal, warning that he intended to turn left across the highway into his field. The turn signals on the tractor's cab were engaged and operational. But defendant concedes that the rear lights on the fertilizer spreader behind his tractor did not work. Defendant slowed as he approached the entrance to the field. And, believing that no other vehicles were behind him, defendant began to turn left across the highway. At that same time, plaintiff had emerged from behind the tractor and crossed the solid, double yellow centerline into the westbound lane to pass defendant. As he pulled alongside the tractor, plaintiff noticed defendant initiate a left turn into his path. Startled, plaintiff pulled his motorcycle sharply to the left, crashing into a roadside ditch. The impact of the crash threw plaintiff from the motorcycle and injured him.

Plaintiff's Complaint (Doc. 1) alleges that defendant operated his tractor negligently and was the direct and proximate cause of plaintiff's injuries. Defendant's Answer (Doc. 7) asserts an affirmative defense of comparative fault, claiming that plaintiff's own negligence caused or contributed to his injuries. As one of several bases for his comparative fault defense, defendant contends that plaintiff drove negligently by attempting to pass defendant "in a marked 'no passing zone' and/or intentionally driving over or left of center of a double yellow line[.]" Doc. 7 at 4. Plaintiff's motion seeks summary judgment against that defense. Plaintiff asks the Court

7

to conclude, as a matter of law, that defendant cannot "use the 'no passing zone' argument as a basis for comparative fault at trial." Doc. 31 at 10.

**B. Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute [about] any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245-46 (10th Cir. 2010)). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest on its pleadings but must bring forward specific facts showing a genuine issue for trial [on] those

dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248-49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### C. Analysis

Plaintiff asserts that the Court should grant summary judgment against defendant's affirmative defense that alleges plaintiff is comparatively at fault for his own injuries by attempting to pass defendant's tractor in a no-passing zone. Plaintiff contends that the uncontroverted facts show that his attempt to pass defendant complied with the limited, "obstruction" exception to the Kansas no-passing zone statutes, K.S.A. § 8-1514(a)(2) and K.S.A. § 8-1520(c).

Generally, Kansas law prohibits drivers from crossing the centerline of a roadway in a no-passing zone:

9

Where signs or markings are in place to define a no-passing zone as set forth in subsection (a), no driver at any time shall drive on the left side of the roadway within such no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length.

K.S.A. § 8-1520(b). There are, however, two exceptions to this provision. Specifically, K.S.A. § 8-1520(c) provides that the no-passing zone statute "does not apply under the conditions described in subsection (a)(2) of K.S.A. 8-1514, nor to the driver of a vehicle turning left into or from an alley, private road or driveway." K.S.A. § 8-1514(a)(2) provides:

(a) Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:
. . . .

(2) When an obstruction exists making it necessary to drive to the left of the center of the highway, except that any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard[.]

K.S.A. § 8-1514(a)(2).

Plaintiff's motion relies on this statutory exception in subsection (a)(2). Plaintiff contends that defendant may not compare fault "based on plaintiff 'passing him in the double yellow no-passing zone,' because defendant had allowed his tractor to become an obstruction in the road thereby permitting plaintiff to pass him legally." Doc. 32 at 9. Plaintiff thus has framed the two questions that, he claims, the Court must decide:

(1) What is the meaning of the undefined word "obstruction" found in K.S.A. 8-1514(a)(2)[;] [a]nd

(2) Whether the undisputed facts establish . . . that[,] as a matter of law[,] defendant's tractor and fertilizer trailer were an "obstruction" and therefore allowed plaintiff to pass defendant, pursuant to K.S.A. 8-1520(c) and 8-1514(a)(2)?

Doc. 32 at 2. The next two subsections address these questions.

**1. The meaning of the word obstruction in K.S.A. § 8-1514(a)(2)**

The Court, first, considers what constitutes an obstruction under K.S.A. § 8-1514(a)(2). Where, as is the case here, "'a term goes undefined in a statute, we give the term its ordinary meaning.'" *Taniguchi v. Kan. Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012) (quoting *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)); *see also State v. Paul*, 175 P.3d 840, 844 (Kan. 2008) ("Ordinary words are given their ordinary meanings.").

Dictionaries define obstruction to mean something that blocks or hinders movement. For example, the Oxford English Dictionary defines the term as "a thing which impedes or prevents passage or progress; an obstacle." Oxford English Dictionary Online (3d ed. 2004), http://www.oed.com/view/Entry/129985?redirectedFrom=obstruction& (last visited Feb. 16, 2016). Similarly, Black's Law Dictionary defines an obstruction as "something that impedes or hinders, as in a street, river, design, flight path, etc." Black's Law Dictionary (10th ed. 2014). Finally, Merriam-Webster's Dictionary describes an obstruction circularly as "something that obstructs." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/obstruction (last visited Feb. 16, 2016). It then defines "obstruct" as the act of "block[ing] or clos[ing] up by an obstacle" or "hinder[ing] from passage, action, or operation." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/obstruct (last visited Feb. 16, 2016).

Plaintiff argues that these definitions prove that an "obstruction need not be fixed, stationary, or permanent." Doc. 32 at 7. Instead, he asserts, the ordinary meaning of obstruction includes stationary obstacles *and* moving objects that slow another's progress. *See id.* at 8 ("All drivers have had a situation where a bicycle, horse, jogger, or some other slow-moving traveler causes traffic to become 'obstructed' in a lane of travel."). Plaintiff thus urges the Court to

11

define obstruction, as it is used in K.S.A. § 8-1514(a)(2), as any "slow-moving or non-moving person or thing that temporarily requires the traffic behind it to move across the double-yellow line to be able to move around the 'obstacle.'" *Id.*

Defendant objects to plaintiff's definition. While he does not dispute that a moving object may be an obstruction, defendant contends that plaintiff's definition is too broad. Defendant asserts that plaintiff's definition "would effectively allow any motorist stuck in rush-hour traffic to pass or overtake over . . . a [solid] yellow line simply because he or she subjectively felt that the traffic ahead . . . was moving too slowly." Doc. 36 at 2. Defendant also argues that the question whether an object constitutes a traffic obstruction is one of fact typically reserved for a jury.

Defendant is partially correct. The final determination whether an object—*i.e.*, defendant's tractor—was an obstruction is a question of fact for the jury. But, at the summary judgment stage, the Court must determine whether admissible evidence exists so as to permit a reasonable jury to reach either conclusion. This determination requires the Court to give meaning to relevant, undefined statutory terms before deciding whether the summary judgment facts show a genuine factual dispute under that statute. The Court thus defines "obstruction," as used in K.S.A. § 8-1514(a)(2), and then applies this definition to the summary judgment facts, as described in part C.2 of this Order.

The Court concludes that plaintiff's definition of obstruction is too broad. As proposed, it leaves a number of important questions unanswered, including: (1) how slow a person or thing must move to be "slow-moving;" (2) how long a person or thing must impede another's progress before it becomes an obstruction; and (3) what persons or things actually "require" drivers to pass in a marked no-passing zone. Plaintiff's definition would place these decisions in the

subjective hands of each driver. And the application of the broad, undefined terms in plaintiff's

definition, such as "slow-moving," "temporary," and "requires," could exclude almost any driver

from the provisions of the Kansas no-passing statute. The Court is not persuaded that the Kansas

Legislature intended to create such an expansive exception to K.S.A. § 8-1520(b). The Court

thus rejects plaintiff's definition. *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982)

("Statutes should be interpreted to avoid untenable distinctions and unreasonable results

whenever possible."); *see also Todd v. Kelly*, 837 P.2d 381, 384-85 (Kan. 1992) ("As a general

rule, statutes are construed to avoid unreasonable results.").

Kansas courts have not decided what constitutes an obstruction under K.S.A. § 8-

1514(a)(2). But the Supreme Court of Georgia has considered the meaning of the word in an

identical provision of the Georgia traffic statutes.[2] *See Smith v. Lott*, 271 S.E.2d 463 (Ga. 1980).

In *Smith*, the court considered whether a jury could determine if "a combine driven at a speed of

eight to seventeen miles per hour on a public road where the speed limit is 55 miles per hour"

was an obstruction that permitted a driver to pass in a no-passing zone. *Id*. at 464. *Smith* held

that a jury could make such a determination because an obstruction need not be a stationary

object. *Id*. The Georgia Supreme Court went on to define an obstruction permitting a motorist

to pass in a no-passing zone, as follows:

---

[2]      The Georgia statute, in relevant part, provides:

> Upon all roadways, of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:
> . . . .
>
> (2) *When an obstruction exists making it necessary to drive to the left of the center of the highway*, provided that any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such a distance as to constitute an immediate hazard[.]

Ga. Code Ann. § 40-6-40(a)(2) (emphasis added). This language is identical to that of K.S.A. § 8-1514(a)(2).

A motor vehicle may be an obstruction when it is operated on a public road in a manner which could not be generally or reasonably anticipated, taking into account all of the circumstances and conditions present at such time and place, and thereby hinders or impedes the proper travel on such road. Except in clear and palpable cases, the issue of when a vehicle is so operated is one for the jury.

*Id*.

The Court concludes that Georgia's definition of obstruction is persuasive. The meaning given to the term by *Smith* recognizes that a vehicle may amount to an obstruction whether it is static or in motion. On any given road, a multitude of disparate factors may cause a vehicle to block or impede traffic. The *Smith* definition recognizes this practical reality and determines whether a vehicle is an obstruction in light of the unique circumstances and conditions in play on the road at the time. By doing so, *Smith's* definition affords drivers adequate leeway to react to unexpected and potentially dangerous objects or impediments on the roadway. It also preserves the limited nature of the no-passing zone exception. Lacking any Kansas authority, the Court adopts the Georgia court's definition of obstruction in applying the Kansas exception to K.S.A. § 8-1514(a)(2) and K.S.A. § 8-1520.

### 2. The unconverted facts do not establish that defendant's tractor was an obstruction as a matter of law.

Plaintiff asserts that the uncontroverted facts establish that he was excepted from the Kansas no-passing statute because defendant's tractor had become an obstruction under K.S.A. § 8-1514(a)(2). Specifically, plaintiff contends that defendant was an obstruction because the uncontroverted facts show that:

The defendant was either fully stopped or was only moving about 5 mph when the two bikers went around him, whereas the posted speed limit was 55 mph. Uncontroverted Facts 4, 5.

Regardless which party or witness's version of events is taken as true, it is clear that the defendant's tractor-trailer was fully blocking the lane of travel that both it and the motorcycles were traveling in. Uncontroverted Fact 6.

. . . .

> Defendant's turn signals on the rear of the trailer were not connected and were not functional, so no indication was visually communicated to plaintiff that the defendant intended to turn off the roadway and "clear the obstruction" from the lane of travel. Uncontroverted Fact 8.

Doc. 38 at 6. Based on these facts, plaintiff argues that he deserves partial summary judgment against defendant's comparative fault defense under "any common-meaning definition of obstruction the Court may apply[.]" *Id*. The Court disagrees because plaintiff's argument misapprehends the summary judgment record.

Defendant properly disputes the material facts that plaintiff asserts are uncontroverted. Notably, defendant testified that his tractor was driving at 15 miles per hour—not 5 miles per hour—on K-16 when plaintiff and Mr. Rosas approached. Defendant also testified that he never stopped the tractor. Instead, defendant testified that he activated his left turn signal as he neared the entrance to his field and slowed the tractor only after initiating his turn across the highway. And, while defendant concedes that his fertilizer spreader's turn signals did not work, defendant testified that the signals on top of his tractor's cab were engaged and operational. In sum, defendant has adduced admissible facts from which a reasonable jury could find that his tractor never amounted to an obstruction because it moved at an adequate speed and the cab-mounted turn signals notified plaintiff of his intent to turn. Defendant thus has established a genuine issue of material fact that precludes summary judgment.

Also, plaintiff has failed to adduce evidence that defendant operated his tractor in a manner that "could not be generally or reasonably anticipated" on the relevant portion of K-16. The summary judgment facts show that the segment of K-16 where the accident occurred is located in a rural area, flanked on at least one side by farm fields. A rational jury could conclude

15

that a reasonably prudent driver on K-16 should anticipate slow-moving farm equipment such as defendant's tractor. That same jury, under the same evidence, could reach the opposite conclusion. Plaintiff therefore has failed to carry his burden under Rule 56(a) and so the Court thus denies plaintiff's motion for partial summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Partial Summary Judgment (Doc. 31) is denied.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Exclude (Doc. 33) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 23rd day of February, 2016, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**